IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

COLUMBIA GAS TRANSMISSION, LLC,

            Plaintiff,

v.                         //    CIVIL ACTION NO. 1:18CV8
                                     (Judge Keeley)

169.19 ACRES OF LAND, MORE OR LESS,
IN DODDRIDGE, RITCHIE, TYLER, AND
WETZEL COUNTIES, WEST VIRGINIA, ET AL.,

            Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]

The plaintiff, Columbia Gas Transmission, LLC ("Columbia"), seeks to condemn certain temporary and permanent easements necessary for the construction and operation of a natural-gas pipeline that runs through West Virginia. To facilitate the expeditious completion of its project, Columbia seeks partial summary judgment regarding its right to condemn the easements, and a preliminary injunction allowing it to access and possess the property prior to paying just compensation. After carefully considering the record, and the evidence adduced at a hearing on February 16, 2018, for the following reasons, the Court **GRANTS** Columbia's Motion for an Order of Condemnation and for Preliminary Injunction.

## I. LEGAL FRAMEWORK

This proceeding is governed by the Natural Gas Act ("NGA" or "the Act"), which provides private natural-gas companies the power

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF
CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

to acquire property by eminent domain. 15 U.S.C. § 717 <u>et seq.</u>

Under the Act, a "natural-gas company" is "a person engaged in the

transportation of natural gas in interstate commerce, or the sale

in interstate commerce of such gas for resale." <u>Id.</u> § 717a(6). Such

companies may build and operate new pipelines only after obtaining

a certificate of public convenience and necessity ("Certificate")

from the Federal Energy Regulatory Commission ("FERC" or "the

Commission"). As the Fourth Circuit has summarized:

> The procedure for obtaining a certificate from FERC is
> set forth in the NGA, and its implementing regulations.
> The process begins with an application from the gas
> company that includes, among other information, (1) a
> description of the proposed pipeline project, (2) a
> statement of the facts showing why the project is
> required, and (3) the estimated beginning and completion
> date for the project. Notice of the application is filed
> in the Federal Register, public comment and protest is
> allowed, and FERC conducts a public hearing on the
> application. As part of its evaluation, FERC must also
> investigate the environmental consequences of the
> proposed project and issue an environmental impact
> statement. At the end of the process FERC issues a
> certificate if it finds that the proposed project "is or
> will be required by the present or future public
> convenience and necessity." In its order issuing a
> certificate, FERC specifies a date for the completion of
> construction and the start of service. The certificate
> may include any terms and conditions that FERC deems
> "required by the public convenience and necessity."

<u>E. Tenn. Nat. Gas Co. v. Sage</u>, 361 F.3d 808, 818 (4th Cir. 2004)

(internal citation omitted).

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

"Once FERC has issued a certificate, the NGA empowers the certificate holder to exercise 'the right of eminent domain' over any lands needed for the project." Id. (citing 15 U.S.C. § 717f(h)). The authority by which natural-gas companies may exercise the right is set forth fully in the Act:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided*, That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

15 U.S.C. § 717f(h). Notably, the "state procedure requirement has been superseded" by the implementation of Fed. R. Civ. P. 71.1, which provides the applicable procedure in most condemnation cases. See Sage, 361 F.3d at 822.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

There are, therefore, three essential prerequisites that must be met prior to exercising the power of eminent domain under the NGA. The natural-gas company must only establish that "(a) It is a holder of a certificate of public convenience and necessity; (b) It needs to acquire an easement, right-of-way, land or other property necessary to the operation of its pipeline system; and (c) It has been unable to acquire the necessary property interest from the owner." Rover Pipeline LLC v. Rover Tract No(s) WV-DO-SHB-011.510-ROW-T & WV-DO-SHB-013.000-ROW-T, No. 1:17cv18, 2017 WL 5589163, at *2 (N.D.W.Va. Mar. 7, 2017).

Further, the law in the Fourth Circuit is clear that, "once a district court determines that a gas company has the substantive right to condemn property under the NGA, the court may exercise equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction." Sage, 361 F.3d at 828. A preliminary injunction is proper when the plaintiff can "[1] establish that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4]

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF
CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

that an injunction is in the public interest." <u>Winter v. Nat. Res.
Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008).[1]

## II. BACKGROUND

On December 29, 2017, FERC granted a Certificate to Columbia
authorizing construction of 170.9 miles of natural-gas pipeline in
West Virginia ("the Project") (Dkt. No. 1-1 at 2).[2] The Project
also includes the construction or modification of several
compressor stations, a regulating station, and tie-in sites. <u>Id.</u> at
3-5. The Certificate is subject to various environmental
conditions, including those that must be fulfilled before and
during construction of Columbia's pipeline. <u>Id.</u> at app. C.

Columbia must obtain easements along the Project in order to
construct its pipeline, and under the appropriate circumstances the
NGA grants it the authority to do so by eminent domain. On January

---

[1] Because the Court refers to the facts and analysis in <u>Sage</u>
throughout this Opinion and Order, it bears noting that <u>Sage</u>
applied the preliminary injunction test from <u>Blackwelder Furniture
Co. v. Seilig Mfg. Co., Inc.</u>, 550 F.2d 189, 193-96 (4th Cir. 1977),
which was abrogated by the Supreme Court's holding in <u>Winter</u>. <u>Real
Truth About Obama, Inc. v. Fed. Election Com'n</u>, 575 F.3d 342, 346-
47 (4th Cir. 2009), <u>vacated on other grounds and remanded</u>, 559 U.S.
1089 (2010), <u>standard reaffirmed in</u> 607 F.3d 355 (4th Cir. 2010).
Nonetheless, <u>Sage</u> is binding on this Court to the extent that its
analysis of each preliminary injunction factor comports with the
requirements of <u>Winter</u>.

[2] Citations to the FERC Certificate reference pagination of
the FERC Certificate itself rather than CM/ECF pagination.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF
CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

12, 2018, Columbia sought to exercise that authority over certain property located in the Northern District of West Virginia, which it was unable to acquire by agreement, by filing a complaint pursuant to the NGA and Fed. R. Civ. P. 71.1 (Dkt. No. 1). As required by Rule 71.1(c)(2), Columbia included descriptions of the property, as well as the interests to be taken (Dkt. Nos. 1 at 67-96; 1-2). On January 16, 2018, Columbia moved for partial summary judgment on its right to condemn the subject property, as well as a preliminary injunction allowing it to immediately possess the property (Dkt. No. 4). Columbia also moved to expedite a hearing on its motion, given that it must clear vegetation and trees from the subject easements by March 31, 2018 (Dkt. No. 5).

Pursuant to Fed. R. Civ. P. 71.1(e)(2), the following defendants asserted defenses by answering the complaint: David Martin Weekley, David M. Weekley and Rebecca L. Weekley, Albin A. Gasek and Carol A. Gasek, Dallas F. Smith, Charles Lynn Perine and Vickie D. Perine, John R. Umstead and D. Germaine Umstead, Doris L. Davis, Daniel R. Clevenger and Mary Lou Clevenger, Bruce E. Shamblin and Sharon L. Shamblin, Timothy N. Wells, James E. Coen and Shawn Coen, Samuel R. Haught and Clara M. Haught, Kenneth VanDyne and Vicky A. VanDyne, Donald L. Mason and Myrna R. Mason,

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

and Tommy A. Bassett (Dkt. No. 295); Frontier West Virginia, Inc. (Dkt. No. 353); and Monongahela Power Company (Dkt. No. 402).

On February 16, 2018, the Court conducted an evidentiary hearing at which, despite being provided notice of the hearing, no defendant actively participated. Columbia presented the testimony of Troy Tally ("Tally"), a project director employed by TransCanada Corporation, which wholly owns Columbia. Tally's testimony regarding the Project will be discussed in more detail below.

### III. MOTION FOR ORDER OF CONDEMNATION

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and

limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. <u>Id.</u> at 248–52.

The Court may only exercise its equitable power to grant a preliminary injunction after determining "that a gas company has the substantive right to condemn property under the NGA." <u>Mid Atlantic Express, LLC v. Baltimore Cty., Md.</u>, 410 F. App'x 653, 657 (4th Cir. 2011) (unpublished decision) (quoting <u>Sage</u>, 361 F.3d at 828). As discussed, to establish that it has the right to condemn, Columbia must demonstrate only that 1) it holds a FERC Certificate, 2) it needs to acquire the easements, and 3) it has been unable to

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

acquire them by agreement. 15 U.S.C. § 717f(h). Columbia has satisfied each of these elements, and is entitled to partial summary judgment regarding its right to condemn.

First, the parties cannot dispute that FERC issued a Certificate to Columbia on December 29, 2017 (Dkt. No. 1-1). Second, Columbia has established that the easements are "necessary and consistent with the easement rights that FERC authorized [Columbia] to obtain." Rover Pipeline LLC, No. 1:17cv18, 2017 WL 5589163, at *2. The uncontested evidence in this case demonstrates that the easements sought "are portions of the route approved by the FERC Certificate as necessary for the construction, maintenance, operation, alteration, testing, replacement, and repair of the Project," and that "Columbia cannot construct the Project in accordance with the FERC Certificate without acquiring the [e]asements" (Dkt. No. 4-1 at 5). Indeed, Tally testified that the easements sought in this case are the same easements identified in alignment sheets Columbia submitted to FERC.

Finally, to the extent it was able to contact the record owners, Columbia has made offers to purchase the interests at issue this case. Those owners either declined Columbia's offers or failed to respond. Id. at 6-7. "[T]he amounts claimed by the [owners] relative to the outstanding [e]asements exceed $3,000." Id. at 7.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]

The Court thus concludes that Columbia has been unable to acquire the easements by contract or agreement. Therefore, because Columbia has satisfied the three requirements of 15 U.S.C. § 717f(h), the Court confirms Columbia's right to condemn the easements described in the complaint and **GRANTS** its motion for an order of condemnation (Dkt. No. 4).

### IV. MOTION FOR IMMEDIATE ACCESS AND POSSESSION

Given its authority to condemn the subject easements, Columbia seeks a preliminary injunction permitting it to access and possess the easements prior to paying just compensation (Dkt. No. 6). A preliminary injunction is proper when the plaintiff can "[1] establish that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter, 555 U.S. at 20. "[A]ll four requirements must be satisfied," Real Truth About Obama, Inc., 575 F.3d at 346, and "[a] preliminary injunction shall be granted only if the moving party clearly establishes entitlement." Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017).

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

The Court is mindful that "[a] preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24. Moreover, "[m]andatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." Sage, 361 F.3d at 828 (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)). Having given heightened scrutiny to Columbia's request for a mandatory preliminary injunction in light of the factors outlined in Winter, the Court concludes that the exigencies warrant such relief.

**A.    Columbia is likely to succeed on the merits.**

For the reasons previously discussed, Columbia has satisfied the requirements of 15 U.S.C. § 717f(h) and is authorized to condemn the easements at issue. It has succeeded on the merits, and thus has satisfied the first factor. See Sage, 361 F.3d at 829-30.

**B.    Columbia is likely to suffer irreparable harm.**

Columbia must next establish that it will be irreparably harmed in the absence of an injunction. Winter, 555 U.S. at 20. Its harm must be likely rather than merely possible. Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc., 700 F. App'x 251, 263 (4th Cir. 2017) (unpublished decision) (citing Winter, 555 U.S. at

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

22)). After carefully reviewing the record, the Court concludes that Columbia will suffer irreparable harm.

The threshold question regarding irreparable harm is whether Columbia's anticipated economic losses are sufficient to warrant a preliminary injunction. Typically, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction] are not enough." Di Biase, 872 F.3d at 230 (quoting Sampson v. Murray, 415 U.S. 61, 90 (1974)). However, this maxim is tied to "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date." Id. In other words, "[w]hile it is beyond dispute that economic losses generally do not constitute irreparable harm, this general rule rests on the assumption that economic losses are recoverable." N.C. Growers' Ass'n, Inc. v. Solis, 644 F. Supp. 2d 664, 671 (M.D.N.C. 2009).

A plaintiff may "overcome the presumption" against a preliminary injunction regarding wholly economic harm, Di Biase, 872 F.3d at 230 (citing Hughes Network Syss., Inc. v. InterDigital Commc'ns Corp., 17 F.3d 691, 694 (4th Cir. 1994)), in the "extraordinary circumstances . . . when monetary damages are unavailable or unquantifiable." Handsome Brook, 700 F. App'x at 263 (citing Multi-Channel TV Cable Co. v. Charlottesville Quality Cable

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

Operating Co., 22 F.3d 546, 551-52 (4th Cir. 1994)). No party contests that, if Columbia suffers financial losses as the result of its inability to access the condemned easements, it will not be able to recover those losses in this or any other litigation. This weighs in favor of finding irreparable harm. See In re Transcon. Gas Pipeline Co., LLC, 1:16cv02991, 2016 WL 8861714, at *8 (N.D. Ga. Nov. 10, 2016).

Treating economic harm as irreparable under the facts of this case is also consistent with the Fourth Circuit's holding in Sage, which considered several species of irreparable harm, including economic repercussions:

> The district court found that without a preliminary injunction the Patriot Project would suffer "undue delay" and that this delay would cause "significant financial harm both to ETNG and some of its putative customers." This finding has ample support in the record. . . . Constructing a ninety-four-mile pipeline is a complex project that can only progress in phases. Certain portions of the project have to be completed before construction can begin on other portions. Therefore, as the district court recognized, "any single parcel has the potential of holding up the entire project." . . . Furthermore, ETNG is under an order from FERC to complete construction and have the pipeline in operation by January 1, 2005. It would not be possible to meet FERC's deadline without a preliminary injunction.
>
> ETNG is also under contractual obligation to provide natural gas to several electric generation plants and local gas utilities by certain dates. Without a preliminary injunction, ETNG would be forced to breach these contracts. ETNG's inability to satisfy these

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

> commitments would have negative impacts on its customers and the consumers they serve. . . . ETNG estimates that it would lose in excess of $5 million if construction delay caused it to breach its contractual obligations to supply gas. Finally, delay in the construction of the pipeline would hinder economic development efforts in several Virginia counties.

Sage, 361 F.3d at 828-29 (internal citation omitted); see also Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less, 768 F.3d 300, 316 (3d Cir. 2014) (holding that financial harm, along with "safety and potential liability concerns," constituted irreparable harm).

The FERC Certificate requires Columbia to complete its Project by December 29, 2020 (Dkt. No. 1-1 at 49); Columbia, however, plans to begin construction immediately and place the pipeline in service by November 2018 (Dkt. No. 4-1 at 7). Tally testified that, during the course of Columbia's effort to obtain FERC approval, it entered into precedent agreements with various shippers in order to demonstrate the need for the Project. FERC issued the final environmental impact statement ("EIS") regarding the Project on July 28, 2017, and granted the Certificate on December 29, 2017 (Dkt. No. 1-1 at 1, 26).

According to Columbia, it "must commence active construction activities as soon as practicable in order to meet its FERC-approved in-service date of November 2018" (Dkt. No. 4-1 at 7).

When Columbia commences construction, the Project will proceed in the "linear" fashion standard in the industry. After preparing the surface of the easements, Columbia's contractors will excavate and install pipeline along the Project's route. Id. at 7-8. According to Tally, if Columbia is forced to break from this method of construction, it will be forced to pay its contractors an additional $700,000 each time they are required to "work around" a tract. Columbia's construction schedule hinges on the fact that certain tree clearing must be complete by March 31, 2018, in order to comply with regulations of the United States Fish and Wildlife Service that protect the habitat of bats and migratory birds. Id. at 9-10.

If Columbia does not complete the necessary tree clearing by that time, it will be unable to do so until at least October 15, 2018. Id. at 10. Columbia claims that delaying the entire Project until that time will result in the loss of $37.5 million per month in delayed revenue under the precedent agreements, and would deprive its customers – and consequently end users – of additional volume during the crucial winter months. The inability "to meet its contractual commitments to its customers would irreparably harm Columbia's business reputation and goodwill," and may affect Columbia's negotiations with prospective shippers for future

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

projects. In addition, being forced to construct the pipeline during the winter months would increase costs and raise concerns regarding site accessibility and safety. Id. at 10-11.

Of course, an injunction is usually inappropriate where the movant fails to show "that [it] availed [itself] of opportunities to avoid the injuries of which [it] now complain[s]," Di Biase, 872 F.3d at 235, and courts have declined to consider harms that are self-inflicted. See, e.g., Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp., 320 F.3d 1081, 1106 (10th Cir. 2003); Davis v. Mineta, 302 F.3d 1104, 1116 (10th Cir. 2002) ("As we have previously concluded, the state entities involved in this case have 'jumped the gun' on the environmental issues by entering into contractual obligations that anticipated a pro forma result."); Livonia Props. Holdings, LLC v. 12840-12976 Farmington Road Holdings, 399 F. App'x 97, 104 (6th Cir. 2010) ("[S]elf-inflicted harm is not the type that injunctions are meant to prevent.").

As have other courts, this Court recognizes that a FERC-governed, natural-gas company's "self-inflicted" contracts and deadlines are not driven solely by its desire to place the pipeline into service as quickly as possible. See Transcon., 1:16cv02991, 2016 WL 8861714, at *9. That the FERC deadline is not yet looming, however, does not negate the reality that the Project is and always

has been time sensitive. <u>See, e.g.</u>, <u>Sage</u>, 361 F.3d at 830 ("ETNG could not meet FERC's deadline without immediate possession."); <u>Columbia Gas</u>, No. 2:17cv70, 2017 WL 383214, at *7 (S.D. Ohio Mar. 3, 2017) (acknowledging that the prospect of missing FERC's deadline is irreparable harm). The process by which natural-gas companies obtain approval and construct under the NGA necessitates forethought and a degree of speculation.

According to Tally, Columbia entered shipping contracts to demonstrate to FERC that there was a market demand for its Project, and it made the business decision to secure and mobilize its contractors in advance of receiving FERC approval. Even an aggressive bidding process for such contractors typically lasts between five and six months, and the contractors must have time to plan and acquire materials prior to receiving FERC approval. Moreover, the market for major pipeline project contractors is small and comprised of specialized laborers that Columbia had to ensure were available to work on its Project. Undoubtedly, Columbia decided to accept the risk that FERC would not approve its Project, but FERC did approve the Project and Columbia is appropriately prepared for construction.

In addition, other practical considerations underscore the wisdom of Columbia's decision to prepare for construction. Given

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

the likelihood of trials on just compensation, this litigation may not be complete sufficiently in advance of the FERC deadline. Testimony at the evidentiary hearing established that, although it prefers to do so in 12 months, Columbia can construct the Project in approximately 9 months. Given that the FERC Certificate requires Columbia to complete the Project by December 2020, and assuming there are no other delays, Columbia must commence construction no later than the time the tree-clearing window closes in March 2020. Based on the evidence, the prospect that this litigation could be complete in that time, rendering equitable relief entirely unnecessary, is "unfounded" and "fanciful." Columbia Gas Transmission, LLC v. 252.071 Acres More or Less, No. ELH-15-3462, 2016 WL 1248670, at *15 (D. Md. Mar. 25, 2016).

Currently, there are hundreds of defendants and 32 parcels of land at issue in the case. Some defendants and parcels may be joined for trial on just compensation, and others may reach agreements, but requiring Columbia to forego equitable relief would necessitate several trials before construction could begin. "It is not at all likely that this Court could accommodate, in the requisite time, the need for multiple trials, given the Court's busy docket." Id. Even if the Court's other obligations were less pressing, it is possible that "some or all of the Landowners may

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF
CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

appeal the outcome of the trials, which could add to the delay."

Id. (providing example of case that remained pending on appeal more
than two years after its original filing).

**C.   The balance of equities tips in Columbia's favor, and an
injunction is in the public interest.**

The third and fourth elements of the preliminary injunction
test require Columbia to establish clearly that the balance of
equities tips in its favor and that an injunction also is in the
public interest. Winter, 555 U.S. at 20. In cases involving
significant public interest, courts may "consider the balance of
the equities and the public interest factors together." As the
Fourth Circuit has explained:

> Even if Plaintiffs are likely to suffer irreparable harm
> in the absence of a preliminary injunction, we still must
> determine that the balance of the equities tips in their
> favor, "pay[ing] particular regard for the public
> consequences in employing the extraordinary remedy of
> injunction." Weinberger v. Romero-Barcelo, 456 U.S. 305,
> 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). This is
> because "courts of equity may go to greater lengths to
> give 'relief in furtherance of the public interest than
> they are accustomed to go when only private interests are
> involved.'" E. Tenn. Nat. Gas Co. v. Sage, 361 F.3d 808,
> 826 (4th Cir. 2004) (quoting Virginian Ry. Co. v. Sys.
> Fed'n No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed.
> 789 (1937)).

Int'l Refugee Assistance Project v. Trump, 857 F.3d 554, 602 (4th
Cir. 2017).

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

Particularly in light of the significant public interest at issue, the irreparable harm that Columbia will likely suffer outweighs the effect of an injunction on the defendants. Completion of the Project will have the same impact on the defendants' property whether Columbia is granted immediate access or commences construction only after landowners have received just compensation. The fact that an injunction will deprive the defendants of their land now rather than later is not "a type of an inherent harm that is irreparable," but rather is an ordinary burden of citizenship. Sage, 361 F.3d at 829. At bottom, it is the NGA and the FERC Certificate that are responsible for the defendants' injuries, and delaying access until just compensation is paid will do nothing to alleviate those burdens. See id. ("This is simply a timing argument . . . ."); Columbia Gas, 768 F.3d at 316 ("The Landowners have not stated any concrete injury other than the loss of the easements over their land, which will definitely occur . . . .").

There simply is no reason to depart from the Fourth Circuit's reasoning in Sage:

> Congress passed the Natural Gas Act and gave gas companies condemnation power to insure that consumers would have access to an adequate supply of natural gas at reasonable prices. As the district court observed, FERC conducted a careful analysis of the . . . [p]roject and determined that the project will promote these congressional goals and serve the public interest. The

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF
CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

> project serves the public interest because, among other
> things, it will bring natural gas to portions of
> southwest Virginia for the first time. This will make gas
> available to consumers, and it will help in the efforts
> of local communities to attract much-needed new business.
> On a larger scale, the pipeline will make gas available
> for electric power generation plants. A delay in
> construction would postpone these benefits.

Sage, 361 F.3d at 830 (internal citation omitted).[3]

Here, "[t]he Project will increase deliverability by
approximately 1,800,000 Dth/d to multiple Midwest, Northeast, and
Mid-Atlantic markets. It will also add an additional 900,000 Dth/d
of capacity to markets in the South and Gulf Coast" (Dkt. No. 4-1
at 4-5). In addition, FERC has concluded that there is a "need for
the [Project]," and that the "benefits to the market outweigh any
adverse economic effects on existing shippers, other pipelines and
their captive customers, and landowners and surrounding
communities" (Dkt. No. 1-1 at 18).

The Court will not second-guess FERC's determination that
Columbia's project will benefit the public need for natural gas;
FERC possesses the expertise necessary to make that determination.

---

[3] Of course, the Court is cautious in applying the reasoning
in Sage regarding public interest. The Fourth Circuit's former
reasoning Blackwelder did not require courts to consider public
interest "at length," while Winter requires that courts "pay
particular regard for the public consequences." Real Truth About
Obama, Inc., 575 F.3d at 347. In this case, however, the "public
consequences" all weigh in favor of an injunction.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]

There can be no dispute that delaying Columbia's completion of the project will delay the introduction of the benefits identified by FERC. Moreover, according to Tally, the Project includes the investment of approximately $50 million in public road improvements, and expediting construction will hasten the creation of approximately 8,000 temporary jobs and $55 million per year in property tax revenue.

In summary, the Court has carefully considered each of the four factors articulated in <u>Winter</u>, and has given them heightened scrutiny in light of Columbia's request for a mandatory preliminary injunction. Columbia has carried its burden to clearly establish that it will be irreparably harmed in the absence of a preliminary injunction, that the harm to the defendants does not outweigh Columbia's harm, and that granting immediate access is in the public interest. Therefore, the Court **GRANTS** Columbia's motion for immediate access and possession of the easements at issue.

### V. CASH DEPOSIT AND BOND

Having determined that granting immediate access is appropriate in this case, the Court must determine the conditions under which such access should be granted. As an initial matter, the Court is satisfied that Columbia is capable of providing

22

"reasonable, certain, and adequate provision" that the defendants will obtain compensation prior to having their occupancy disturbed. Sage, 361 F.3d at 824 (citing Cherokee Nation v. S. Kan. Ry. Co., 135 U.S. 641 (1890)). Columbia has repeatedly expressed a willingness to deposit money with the Court and to obtain a bond pursuant to Fed. R. Civ. P. 65(c) (Dkt. Nos. 4-2 at 8, 17-18). If just compensation exceeds these amounts, Columbia "will be able to make up the difference" at the time of judgment or face further legal action by the defendants. Sage, 361 F.3d at 824. Evidence at the evidentiary hearing established that TransCanada Corporation, Columbia's parent company, has a yearly net income of approximately $2.5 billion. See id.

Therefore, upon consideration of these facts, with the exception of Columbia Tract No. WV-TY-0046.000,[4] the Court finds that Columbia may immediately access and possess the relevant easements after the following conditions have been satisfied:

_____

[4] On February 9, 2018, one of the surface owners of this tract, Ascent Resources Marcellus Minerals, LLC ("Ascent"), filed a Notice of Suggestion of Pendency of Bankruptcy, advising that it had filed for bankruptcy protection on February 6, 2018 (Dkt. No. 255). At the evidentiary hearing, Columbia acknowledged that it cannot presently seek relief in this forum regarding any property in which Ascent owns an interest.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

1) Effective upon entry of this Memorandum Opinion and Order and satisfaction of the conditions discussed below, Columbia is granted immediate possession of the easements described in its complaint, as consistent with the FERC Certificate.

2) Pursuant to the Federal Rules of Civil Procedure 65(c), 67, and 71.1(j)(l), the right to immediate possession of the easements on these properties is contingent upon Columbia satisfying two requirements as to security. First, pursuant to the provisions of Fed. R. Civ. P. 71.1(j), Columbia must deposit with the Clerk of Court ("Clerk") a certified check in an amount of three times the appraised amount for each of the easements sought.[5]

3) Second, Columbia shall obtain and post a surety bond in the total amount of two times the appraised amount for the easements sought. The bond shall be conditioned on Columbia's payment of any and all final compensation damages awarded in excess of the deposited amount, and if such payments are made,

---

[5] For easements that Columbia has appraised as worth $3,000 or less, Columbia shall nonetheless base the deposit and bond on a presumed value of $3,001. 15 U.S.C. § 717f(h) (granting jurisdiction over actions where the "amount claimed by the owner of the property to be condemned exceeds $3,000").

then the bond shall be null and void upon full payment having been made as to all of the properties.

4) The total value is designed to serve as sufficient security to protect the interests of the landowners in the event any just compensation awarded for one or more of the easements exceeds the appraised amount for such property or properties. The multiplied value, the bond amount, or the two combined, shall not be construed as any indication of the floor or ceiling of the ultimate amount of just compensation, if any, to which any interest-holder is entitled. Instead, the eventual compensation award by this Court, a jury, or a compensation commission may be lower, higher, or the same as the amount Columbia is required to provide as security.

5) Columbia shall remit the deposit amounts to the Clerk for deposit into the registry of this Court. The Clerk shall deposit the amounts received into the registry of this Court and then, as soon as the business of the Clerk's office allows, the Clerk shall deposit these funds into the interest-bearing Court Registry Investment System administered by the Administrative Office of the United States Courts as Custodian, pursuant to Fed. R. Civ. P. 67.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

6) At the time it remits any deposit or deposit(s), Columbia shall also file a chart broken down by easement that identifies: (i) each appraised property for which funds are being deposited; (ii) the corresponding Columbia parcel numbers; (iii) the corresponding paragraph numbers in the amended complaint; (iv) the amount of the deposit for that specific property (which will be three times the appraised amount); (vi) the amount of the bond that relates to that specific property (which will be two times the appraised amount); and (vii) all persons or entities who own an interest in the property and the percentage of each person's interest. The information shall also be emailed to the Court in an Excel spreadsheet format. If any party disputes the accuracy of any information in the chart, he shall file an objection not later than seven (7) days after service the chart. Additionally, all parties - including Columbia and any defendants who have an interest in any of the deposited funds - have a continuing duty, until the conclusion of all proceedings, to advise the Court if the information in any filed chart changes. This includes, in particular, a duty to advise the Court if there

is any change for any parcel in the number of owners or the percentages of their ownership interests.

7)  Pursuant to Fed. R. Civ. P. 71.1(j)(2), the deposit of any funds for an identified defendant's property shall constitute Columbia's agreement that the interest-holder can access up to the base amount of the appraisal or one-third of the deposited amount, whichever is greater. Such withdrawal is at the landowner's peril, and all defendants are advised that, if the ultimate compensation award is less than the amount withdrawn, the interest-holder will be liable for the return of the excess with appropriate interest. If multiple defendants claim an interest in any of the easements, each defendant claiming an interest can withdraw only its proportionate share of the funds identified for that easement and attributable to its claimed interest.

8)  Each of the defendants shall be entitled to draw from one-third of the funds deposited by Columbia with the Clerk its ownership share of the amount of estimated just compensation deposited by Columbia for the easement which burdens lands in which such defendant owns or claims an interest, subject to the warnings above, and provided that each such defendant

satisfies all conditions of this Memorandum Opinion and Order and any other direction of the Court. Furthermore, such defendants shall be entitled to interest calculated pursuant to 28 U.S.C. § 1961 from and after the date of entry of this Memorandum Opinion and Order on the difference between the principal amount deposited with the Court by Columbia and the amount of just compensation determined by the Court, if any, if such determination of just compensation to be paid exceeds the amount deposited by Columbia.

9) A defendant who wishes to draw on the deposited funds shall file a motion for disbursement of funds with the Court and shall include a certificate of service evidencing service of the motion on all other persons with a property interest in the same parcel or easement, if any. Any person objecting to the disbursement shall have fourteen (14) days to file a written objection with the court. The Court will then resolve any objections and issue an order on the withdrawal request. If there are no other persons with an interest in the property, disbursement will be permitted only by a separate order of the Court, but the period for objections will not apply.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR ORDER OF**
**CONDEMNATION AND FOR PRELIMINARY INJUNCTION [DKT. NO. 4]**

## VI. CONCLUSION

For the reasons discussed, the Court:

1)   **GRANTS** Columbia's Motion for an Order of Condemnation and
     for Preliminary Injunction (Dkt. No. 4);

2)   **DENIES AS MOOT** Columbia's Motion for an Expedited Hearing
     (Dkt. No. 5); and

3)   **DIRECTS** Columbia to deposit funds and a surety bond prior
     to accessing and taking possession of the properties as
     set forth above.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order
to counsel of record.

DATED: February 21, 2018.

                              /s/ Irene M. Keeley
                              IRENE M. KEELEY
                              UNITED STATES DISTRICT JUDGE